United States Bankruptcy Court
Eastern District of Michigan
Southern Division- Flint

In re:
HYDRO COMPLIANCE MANAGEMENT, INC.,            Case No. 04-31387-WS
          Debtor.            Chapter 7
_____/

**Opinion on Debtor's Motion**

This matter is before the Court on Bamcon Engineering, Inc.'s ("Bamcon"), motion for an order allowing and compelling payment an administrative expense claim against Hydro Compliance Management, Inc. ("Debtor"). Debtor filed a petition for relief under Chapter 11 on March 31, 2004. On August 17, 2005, Debtor voluntarily converted this case to Chapter 7.

**I. Introduction**

The amounts claimed by Bamcon appear to involve both Chapter 11 and Chapter 7 administrative expense claims. It is not clear that there are or will be sufficient funds to pay Chapter 7 and/or Chapter 11 administrative expense claims.[1] Notwithstanding the potential administrative insolvency situation (and consequent potential mootness of the issue in whole or in part), the Court undertook to make an initial determination as a matter of law as to the entitlement of Bamcon's claim to administrative status based exclusively on an analysis of the face and wording of the licensing agreement alone.

This opinion does not deal with or decide (1) whether or not Debtor actually used or obtained

---

1. Debtor is involved in a case against Vicki Reid Smith, Hydro Compliance Management, Inc. v. Smith, Adv. No. 04-03122. This cause of action is the Debtor's largest asset, and if Debtor does not win in this action, the estate will become administratively insolvent. Even if the Debtor does win the cause of action against Ms. Smith, the debtor may be unable to collect.

any benefit from the licensed technology, to the extent such use or benefit is required to shown incident to a valid administrative claim, nor (2) the exact amount of the claim both of which require an evidentiary hearing in any event.

## II. Facts

Bamcon and Debtor are parties to a sub license agreement ("License Agreement") regarded patented technology known as Hydro-Kleen Technology (the "Technology"). Under the license agreement, Bamcon, as licensor, granted Debtor, as licensee, the exclusive license until June 30, 2015. The license allowed Debtor to manufacture, see, and use products that incorporate the technology. The licensing agreement states that Debtor is obligated to pay Bamcon royalties of 15% of Debtor's net sales of the products that incorporate the technology. The contract also describes a minimum annual royalty payment ranging from $75,000 to $112,500 thru the eighth year of the contract. The Debtor has paid $13,058.00 of the administrative expense. Sixteen-and-a-half months of Chapter 11 administrative expenses are due under the contract, but the parties dispute the amount owed under the contract.

## III. The License Agreement

The License Agreement contains several provisions relevant to this issue. Paragraph 5 of the License Agreement discusses gross annual sales and minimum annual payments for the first year:

> On or before September 1, 2001, [Debtor] shall have generated annual gross sales for the complete twelve (12) month period directly preceding September 1, 2001, . . .at a minimum level of $500,000 or shall have paid to Bamcon on or before September 10, 2001, the Annual Royalty Differential. The Annual Royalty Differential shall be defined as the difference between the total amount of the Royalty Payments actually received by Bamcon in any given year and the following amounts which are the "Minimum Annual Payments.:

2

Years 1 through 3....................................................$ 75,000
Years 4 through 7....................................................$112,500

Paragraph 5 of the License Agreement also discusses Bamcon's remedies with respect to failure of the Debtor to achieve the minimum monthly sales figures, by providing, in part:

> In the event of the failure of [Debtor] to achieve the minimum sales provided for in this Paragraph, Bamcon shall have the absolute right, and its sole discretion, to terminate this Agreement by providing written notification of such termination to [Debtor], which termination shall be effective thirty (30) days following [Debtor's] receipt of such notice. Such election must be made by Bamcon, if at all, and delivered to [Debtor] in writing on or before October 10, 2001, failing which Bamcon shall be deemed to have waived such right, time being of the essence.

In Paragraph 6, the License Agreement discusses continuing minimum sales, which correspond with the minimum annual payment described in Paragraph 5, and the consequences for failing to achieve the minimum sales figures:

> Following the first full year (i.e., through and including August 31, 2001), [Debtor] shall achieve the following sales goals during each year of this Sub License:
> Years 2 through 3 ........................................$500,000 per year
> Years 4 through 7 ........................................$750,000 per year
> Years 8 through 15 ......................................$1,000,000 per year
> (Year 2, as described above, shall run from September 1, 2001 to August 31, 2002; each subsequent year shall run from September 1 to August 31 of the following year.)
> In the event that the minimum sales requirements set forth above are not achieved in any given year, subject to the cure provisions as herein set forth, such failure shall constitute grounds for termination of this Agreement at the option of Bamcon. At the option of [Debtor], the foregoing minimum sales requirements shall be deemed to have been satisfied in the event that [Debtor] pays to Bamcon the Annual Royalty Differential on or before the 10th day following the end of each such year.

Paragraph 6 gives Bamcon the right to terminate the agreement if the annual royalty differential is not paid, and the Debtor has the right to challenge the termination if the annual royalty differential

3

was not paid. The Debtor had the right to agree with Bamcon to procedures for increasing sales or with third party if Bamcon and the Debtor could not agree on procedures.

Paragraph 8 of the License Agreement discusses royalties and credits, in part, stating:

> A. Royalties. [Debtor] shall pay to Bamcon: (a) an initial fee of $5,000.00 upon execution of this Agreement (b) a monthly royalty of 15% of net sales to any persons or entities, other than persons or entities who are affiliated with [Debtor] and who purchased product(s) for resale.
> * * *
> In the event net sales for any given calendar month are less than $20,000, and [Debtor] has nonetheless paid over the minimum payment of $3,000 for said month, a portion of the $3,000 minimum payment (over and above the sum of 15% of actual net sales) shall be applied against royalties due for any future month. . . .In the event that [Debtor] fails to make the Minimum Monthly Payments in a timely fashion as required herein for three (3) consecutive months, Bamcon may, at its option and in its sole discretion, and without further notice or demand, terminate this Agreement or covert the Sub License granted herein to a non-exhaustive sub license.

Paragraph 15, Part E, sets out the applicable law and venue, and reads, in part:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of law provisions.

### IV. Positions of the Parties

Bamcon argues that under the license agreement, there was a minimum monthly payment and if the monthly payment was not met, that the difference between the actual payments and the minimum monthly payments was to be made up under the terms of Paragraph 5 of the license agreement which speaks of the Annual Royalty Differential. Bamcon argues that under that paragraph there is a minimum annual payment which is due by September 10 of each year. Bamcon claims that if the sales fell below the amount contemplated in the license agreement, this annual

4

payment was due pro rata for the year. Bamcon argues that prepetition, Debtor was in default of its obligations under the license agreement to the extent of $86,625 in unpaid royalties. After the petition was filed on March 31, 2004, until June 30, 2005, Debtor became obligated to pay $140,625 in additional royalties, and has paid only $13,058. Debtor continued to accrue minimum monthly payment obligations of $9,375 per month from July 2005 until September 2, 2005, when an order granting relief from the automatic stay was entered.

Bamcon further argues that Debtor's Post-petition royalty obligations constitute administrative expenses, and that the license agreement is an executory contract as contemplated under 11 U.S.C. § 365. Bamcon argues that the Debtor is a debtor in possession and has continued to receive the benefits of the executory contract from Bamcon and thus is obligated to pay the reasonable value of those services. Bamcon argues that it is entitled to an administrative expense claim in the amount of $147,254.50 through September 2, 2005, the date that relief from stay was stipulated.

The Debtor argues that Bamcon never attempted to collect the annual royalty differential until this bankruptcy was filed. Further, under Paragraph 6 the Debtor argues that payment is not mandatory, and if payment is not made, Bamcon had a unilateral right to terminate the contract and nothing more. Debtor claimed that Bamcon had the right to give written notice to terminate if the annual royalty differential was not paid, but that failing to act upon the termination right would be deemed a waiver of that right. The trustee agrees that a Chapter 11 administrative claim is owed but disputes the amount claimed.

## V. Relevant Law

Under California State law, courts engaging in general contract interpretation look to the

objective manifestations of the parties' intent, including the language used in the agreement, extrinsic evidence of objective matters, such as surrounding circumstances under which parties entered into the agreement, the nature and subject matter of the agreement, and the subsequent conduct of both parties. Masterson, Willam et al., California Civil Practice Business Litigation § 24:8 (West 2006). If a contract is internally inconsistent then the inconsistences must be reconciled to give effect to the purpose of the contract and when possible, some effect to all inconsistent clauses. Cal. Civ. Code § 1652 (West 2006). If there are two interpretations of a grant then the interpretation of the grantee is the correct interpretation. *Id*. at § 1864. If an interpretation is plausible, then parol evidence supporting the interpretation may be admitted. Masterson, William et al., Calf. Civ. Prac. Business Litigation § 24:15 (West 2006).

## VI. Discussion

The Court concludes the License Agreement is internally inconsistent. Paragraph 8 sets a minimum monthly payment of $3,000 a month or 15% of gross sales. However, these numbers do not add up to the minimum annual payment. Following the minimum payment schedule always leads to paying less than the minimum annual payment. Paragraph 5 creates the annual royalty differential which is a balloon payment to make up the difference. For example if in year 5 of the contract net sales were less than $20,000 a month for each month, the Debtor would pay $3,000 every month, the minimum monthly payment. The minimum annual payment for year is $112,500. For this hypothetical year 5, the annual royalty differential for the year would be $76,500. If in a hypothetical year 6 the Debtor had $30,000 in net sales in every month, the Debtor would pay monthly $4,500 every month. The minimum annual payment for year 6 is $112,500. The annual royalty differential for the hypothetical year six would be $58,500.

6

04-31387-dof    Doc 193    Filed 09/29/06    Entered 09/29/06 15:14:28    Page 6 of 7

Under Paragraph 5, the agreement makes the annual royalty differential mandatory by stating that it "shall" be paid. In Paragraph 6, however, the Debtor has the option to pay the annual royalty differential and waive the minimum sales requirements. This clause is a grant to the Debtor. If the Debtor has the right to not pay the annual royalty differential, then the Debtor has the right not to pay the minimum annual payment. The option has no meaning if one of Bamcon's remedies is to enforce the payment of the minimum annual payment. Bamcon is given the remedy of termination in Paragraph 6, and the contract gives the Debtor the right to challenge the termination of the agreement and negotiate procedures to increase sales. Again, this right to challenge termination would have no meaning if Bamcon may simply force the Debtor to pay the minimum annual payment. As the Court thus concludes Paragraphs 5 and 6 are inconsistent, it further concludes that the parties should be given the opportunity to present, and the Court would need to hear, appropriate parol evidence to assist in finally resolving the matter in accordance with the referred to California principles of construction.

## VII. Conclusion

The court will schedule but defer an evidentiary hearing on the interpretation of the License Agreement until such time as it is clear that funds will be or become available to make a payment if the claim is allowed as an administrative claim. Motion is DENIED.

**Entered: September 29, 2006**

                                                **/s/ Walter Shapero**
                                   **Walter Shapero**
                                   **United States Bankruptcy Judge**